## In re Thomas

*Frederick A. Boehm,* for petitioner.

LONIK, *J.,* February 6, 1976—Petitioner, South Hills Health System, has called upon this court to undertake a most awesome task of exercising its powers under the doctrine of parens patriae to authorize a life-saving surgical procedure. Anna Thomas, aged 96, was admitted to the South Hills Health System (hereinafter referred to as "hospital") on January 21, 1976. At the time of admission, her medical condition was diagnosed as "possible

urinary tract infection, senility, vague abdominal pain, questionable etiology." At the hospital, Mrs. Thomas was treated by Doctors Jerome Lebowitz, Lee Neiman and Allen Itskowitz. At the request of these doctors, Dr. Anthony Harrison, a general surgeon, examined Mrs. Thomas and determined that her left leg was gangrenous. In its petition, the hospital averred that in Dr. Harrison's medical opinion, "amputation of her left leg above the knee is medically necessary to preserve the life of Anna Thomas." The petition states that Mrs. Thomas is not presently lucid; is unable to consent to the surgical procedure; and has no living relatives. Accordingly, petitioner requests that this court authorize it, by its medical staff, "to provide such medical and surgical care and treatment to Anna Thomas as is consistent with good medical practice including the amputation of a limb."

A hearing on the matter was held late Wednesday afternoon, February 4, 1976. Dr. Harrison testified that the gangrenous condition in Mrs. Thomas' toes has spread throughout her left leg; and that she will not survive without an amputation of the leg. Dr. Harrison stated that due to her physical condition, she was not coherent and was unable to communicate with the hospital attendants. It was the opinion of the surgeon that the life-saving surgery could not be delayed beyond 48 hours. However, the execution of an order authorizing surgery was delayed pending the possibility of some communication with Mrs. Thomas concerning her present condition.

The court, now having been advised that Mrs. Thomas is still not lucid and is unable to communicate her consent for the proposed medical treatment, will issue an order authorizing the required surgery. This court recognizes the gravity of the

situation, and has followed the established principles of law which inexorably led to the above-stated conclusion. This is not a situation where there has been a refusal by the patient or family to permit the surgical procedure. Nor does this case in any way interfere with the individual's right of free exercise of religion. See Application of President and Directors of Georgetown College, Inc., 331 F. 2d 1000 (D.C. Cir., 1964), petition for rehearing en banc denied, 331 F. 2d 1010, cert. denied 377 U.S. 978 (1964); John F. Kennedy Memorial Hospital v. Heston, 58 N.J. 576, 279 A.2d 670 (N.J. 1971); In re the matter of William J. Dell, II, Allegheny County, No. GD75-157 (1975) (Barry, J.). Rather, as stated above, the patient is wholly unable by reason of her physical condition to exercise her free will and consent.

The matter of both life-saving and life-preserving medical treatment was fully and persuasively considered in the recent, much publicized case, In the Matter of Karen Quinlan, 137 N.J. Super. 227, 348 A.2d 801 (1975). This court considers controlling the ruling therein by Judge Muir that the continual care and treatment of one unable to make decisions with respect to her own health was a question for medical determination, not judicial decision. By virtue of the court's inherent equity power, under the doctrine of parens patriae, "the court's power over a person suffering under a disability is to protect and aid the [individual's] best interests." Matter of Quinlan, supra, at pages 819, 822. Society has a well-founded interest in the life of the individual member and law traditionally has sought to preserve the sanctity of human life. The right to life and the preservation thereof are "interests of the highest order." As stated in Matter of Quinlan, at page 823:

"In John F. Kennedy Memorial Hospital v. Heston, 58 N.J. 576, 580, 279 A.2d 670, 672 (1971), Justice Weintraub indicated 'it seems correct to say there is no constitutional right to choose to die.' In doing so the court recognized the State's interest in preserving life. Equally, this court recognizes the State's interest in preserving life, particularly in this instance where the court sits in the capacity of parens patriae. There is a presumption that one chooses to go on living."

The public policy of this Commonwealth has been recognized by statute to this effect in the case of minors, wherein the consent of a parent or guardian is unnecessary if "an attempt to secure consent would result in delay of treatment which would increase the risk to the minor's life or health." Act of February 13, 1970, P. L. 19 (No. 10), 35 PS §10104 (Supp. 1975-76). Although there is no such statutory declaration of public policy in other instances, the life-preserving policy cannot be limited merely to those of tender years, for this court must presume that one intends to live on even to an advanced age.

When a doctor undertakes to treat his patient, the law has placed upon him a duty to exercise in his treatment the degree of care, knowledge and skill ordinarily possessed and exercised under similar circumstances by the average member of his profession and speciality: Matter of Quinlan, supra, page 818, and as Judge Muir affirmed:

"There is a higher standard, a higher duty, that encompasses the uniqueness of human life, the integrity of the medical profession and the attitude of society toward the physician, and therefore the morals of society. A patient is placed, or places himself, in the care of a physician with the expectation that he (the physician) will do everything in his

power, everything that is known to modern medicine, to protect the patient's life. He will do all within his human power to favor life against death."

In Dr. Harrison's medical opinion, the amputation of Mrs. Thomas' leg is essential to her continued life. Similarly, In the Matter of Long Island Jewish-Hillside Medical Center v. Levitt, 73 Misc. 2d 395 (N.Y. Sup. Ct., Nassau Co. 1973), the petitioner hospital sought judicial imprimatur of a medically-recommended surgical treatment. In that case, the court authorized the prescribed amputation of the gangrenous left leg of an 84-year-old man who, because of his physical condition, was unable to make a judgment relative to his health.

The right to life and its preservation are societal interests of the highest degree. Since amputation of Mrs. Thomas' leg is, in the opinion of the medical testimony elicited at Wednesday's hearing, the prescribed medical procedure required to preserve life, the court in this case, after due deliberation and argument, will enter the order accordingly.

## ORDER

And now, February 6, 1976, upon presentation of the petition by Frederick A. Boehm, Esq., attorney for South Hills Health System, it appearing that Anna Thomas is incapable of giving informed consent and is in need of medical and surgical treatment, it is hereby ordered, adjudged and decreed that South Hills Health System, Anthony Harrison, M.D. and Drs. Lebowitz, Neiman and Itskowitz be, and they hereby are, authorized to provide to Anna Thomas such medical and surgical treatment, including limb amputation as may be necessary and

consistent with good medical practice so long as Anna Thomas is a patient at South Hills Health System and is unable to give informed consent.